David M. GASPER, Respondent,

v.

NORTHERN STAR COMPANY and Employers Insurance of Wausau, Relators.

No. C4-87-901.

Supreme Court of Minnesota.

May 6, 1988.

**728**

Allen C. Mueller, Minneapolis, for relators.

David M. Stofferahn, Minneapolis, for respondent.

WAHL, Justice.

This is an appeal from a decision of the Workers' Compensation Court of Appeals (WCCA) holding that an injured employee, working at a wage loss, was entitled to temporary partial disability benefits beyond 90 days after maximum medical improvement where the employee had not been offered and had not found a "suitable" job under Minn.Stat. § 176.101, subd. 3e or 3f (1984) within that 90–day period;

and that temporary partial disability benefits and economic recovery compensation are payable concurrently. We affirm.

David Gasper sustained a back injury on September 19, 1984, while working as a laborer at Northern Star Company (Northern Star). Gasper's duties included transporting heavy objects, pulling large pallets of potatoes, lifting one hundred pound sacks of chemicals, and driving a forklift. At the time of his injury, Gasper was paid $290.25 per week.

Gasper was unable to continue his job as a laborer at Northern Star as a result of his injury. While absent from work, Gasper was paid temporary total disability benefits by Northern Star's Workers' Compensation insurer, Employers Insurance of Wausau (Employers Insurance). In addition, Gasper was provided the services of a Qualified Rehabilitation Consultant and a placement vendor to assist him in finding alternative employment.

On August 15, 1985, Dr. John Roos, M.D., issued a report stating that Gasper had reached maximum medical improvement and that he had a 7% permanent partial disability of the body as a whole as a result of his back injury. The parties have stipulated that September 4, 1985, the date on which Dr. Roos' report was served upon Gasper, is the date on which maximum medical improvement was reached.

On September 26, 1985, Gasper began work as a school bus driver for the Morley Bus Company. This job resulted in a wage-loss and Gasper received temporary partial disability payments from Employers of Wausau. On December 14, 1985, Gasper voluntarily quit the job at the bus company upon discovering that the position, although originally described as "full-time," actually entailed work for only twenty-two hours per week. In addition, the physical movements required to drive a bus aggravated Gasper's back injury.

Before leaving Morley Bus Company, Gasper found part-time employment as a cashier at a SuperAmerica gas station. After leaving SuperAmerica, he began work as a clerk at a Target department store.

He typically works twenty hours per week or less and earns an hourly wage of $3.50.

The insurer discontinued payments of temporary partial disability benefits on November 1, 1985, and began paying Gasper economic recovery compensation for Gasper's 7% permanent partial disability of the body as a whole. Gasper filed an objection to discontinuance of temporary partial disability benefits and a hearing was held on March 27, 1986. The compensation judge determined that Gasper was entitled to ongoing temporary partial disability benefits despite 90 days having passed since maximum medical improvement. The compensation judge further determined that temporary partial disability benefits are payable concurrently with economic recovery compensation. The WCCA affirmed the decision in all respects.

## I.

■ The first issue raised is whether an injured employee, working at a wage loss, is entitled to temporary partial disability benefits beyond 90 days after maximum medical improvement where the employee has not been offered and has not found a "suitable" job under Minn.Stat. § 176.101, subd. 3e or 3f (1984) within that 90–day period.

The Minnesota Workers' Compensation Act applicable at the time of Gasper's injury in 1984, provided in relevant part:

> In all cases of temporary partial disability the compensation shall be 66-⅔ percent of the difference between the weekly wage of the employee at the time of injury and the wage the employee is able to earn in the employee's partially disabled condition. This compensation shall be paid during the period of disability *except as provided in section 176.101, * * *.*

Minn.Stat. § 176.101, subd. 2 (1984) (emphasis added).[1] We must determine then the extent to which the other provisions of section 176.101 serve to limit the availability of temporary partial benefits as described in subdivision 2.

Minn.Stat. § 176.101, subd. 3n provides that "an employee who has been offered a job under subdivision 3e and has refused that offer and who subsequently returns to work shall not receive temporary partial compensation pursuant to subdivision 2 if the job the employee returns to provides a wage less than the wage at the time of the injury." Minn.Stat. § 176.101, subd. 3n (1984).

Minn.Stat. § 176.101, subd. 3h also mentions temporary partial disability benefits: "An employee who accepts a job under subdivision 3e or subdivision 3f and begins that job shall receive temporary partial compensation pursuant to subdivision 2, if appropriate." Minn.Stat. § 176.101, subd. 3h (1984).

The compensation judge and the WCCA held that the availability of temporary partial disability benefits under subdivision 2 is limited only by subdivision 3n. The WCCA reasoned that because subdivision 2 is only limited by subdivision 3n, and the latter provision is not involved in this case, Gasper was entitled to ongoing temporary partial disability benefits for as long as his disability causes him to incur wage loss.

The employer/insurer argue that subdivision 3h acts as a substantive limit upon the payment of temporary partial disability benefits. They argue that under subdivision 3h, temporary partial disability benefits are available to an employee only if the employee begins a job described in section 176.101, subdivision 3e or 3f.

Subdivision 3e describes the so-called "suitable job," a job that the "employee can do in the employee's physical condition and that * * * produces an economic status as close as possible to that the employee would have enjoyed without the disability * * *." Minn.Stat. § 176.101, subd 3e(b) (1984). Subdivision 3f describes a job obtained prior to maximum medical improvement that is within the employee's physical restrictions. Minn.Stat. § 176.101, subd. 3f (1984). The parties agree that Gasper was

---

1. The emphasized portion of the statute was added by the legislature as a part of its extensive revision of the workers' compensation statutes in 1983.

not offered and did not find a job meeting the requirements of either 3e or 3f.

Section 176.101, subd. 3e(a) makes clear that temporary total disability benefits cease 90 days after maximum medical improvement. The legislature's intent with regard to temporary partial disability benefits is less obvious. As previously noted, subdivision 3h states that an employee is entitled to temporary partial disability benefits if the employee accepts a subdivision 3e or 3f job. In the employer/insurer's view, this is the only time such benefits are payable. The employer/insurer argue that if a 3e or 3f job is not obtained by the employee, temporary partial disability benefits, like temporary total disability benefits, are to cease. We do not agree.

While the legislature saw fit to specifically limit payment of temporary total disability benefits to 90 days after maximum medical improvement in Minn.Stat. § 176.101, subd. 3e(a) (1984), it did not place a similar restriction upon the payment of temporary partial disability benefits. In the absence of express language, we decline to read such a limitation into the statute.

Similarly, the employer/insurer would read the word "only" into section 176.101, subd. 3h (1984). They would have us read the language of subdivision 3h as "[only] an employee who accepts a job under subdivision 3e or subdivision 3f and begins that job shall receive temporary partial compensation pursuant to subdivision 2, if appropriate." We find no basis for adopting this reading of the statute. Had the legislature intended the word "only" to appear in the statute, it would have placed it there. We will not supply the limitation.

Due to the absence of statutory language limiting the payment of temporary partial disability benefits to 90 days after maximum medical improvement, we hold that an injured employee, working at a wage loss, is entitled to temporary partial disability benefits 90 days after maximum medical improvement where the employee has not been offered and has not found a

"suitable" job under Minn.Stat. § 176.101, subd. 3e or 3f (1984) within that 90-day period.[2]

## II.

The second issue is whether temporary partial disability benefits and economic recovery compensation may be paid concurrently. The WCCA held in the affirmative. We affirm.

In 1983, the Minnesota legislature made extensive revisions in the workers' compensation provisions regarding permanent partial disability. Section 176.101 was amended to read in part:

> Where the employee has a permanent partial disability and has reached maximum medical improvement or upon completion of an approved retraining program, whichever is later, that employee shall receive economic recovery compensation pursuant to subdivision 3a if no job offer meeting the criteria of the job in subdivision 3e is made within 90 days after reaching maximum medical improvement or 90 days after the end of an approved retraining plan, whichever is later.

Minn.Stat. § 176.101, subd. 3p (1984).

Subdivision 3a provides that:

> If an employee is not eligible for an impairment award pursuant to subdivision 3b, then the employee shall receive economic recovery compensation for a permanent partial disability pursuant to this subdivision. The compensation shall be 66⅔ percent of the weekly wage at the time of injury subject to a maximum equal to the statewide average weekly wage. For permanent partial disability up to the percent of the whole body in the following schedule the compensation shall be paid for the proportion that the loss of function of the disabled part bears to the whole body multiplied by the number of weeks aligned with that percent.

Minn.Stat. § 176.101, subd. 3a (1984).

In the present case, the employee did not receive a job offer meeting the criteria of

---

**2.** We do not address the issue of the availability of temporary partial disability benefits to an injured employee, who, as a result of the injury, has suffered a loss of earning capacity but is not currently employed.

subdivision 3e within 90 days of reaching maximum medical improvement and thus, both parties agree, the employee is entitled to permanent partial disability benefits in the form of economic recovery compensation. Because the employee did begin working at a job that paid substantially less than his job prior to his injury, the question then becomes whether the employee is entitled to be paid temporary partial disability benefits concurrently with the economic recovery compensation payments.

In determining whether the employee in the present case is entitled to concurrent payments of temporary partial benefits and economic recovery compensation, we must examine the law as it existed at the time of the disability-causing injury. *Broos v. Portec, Inc.*, 376 N.W.2d 688, 691 (Minn.1985); *Boltz v. Armour Agricultural Chemical Co.*, 269 Minn. 482, 486, 131 N.W.2d 624, 627 (1964).

In 1984, the year in which Gasper was injured, Minn.Stat. § 176.021, subd. 3 read in relevant part:

> Economic recovery compensation or impairment compensation is payable for functional loss of use or impairment of function, permanent in nature, and payment therefore shall be separate, distinct, and in addition to payment for any other compensation, subject to section 176.101.

Minn.Stat. § 176.021, subd. 3 (1984).

The argument of the employer/insurer that economic recovery compensation is a wage loss replacement and therefore should not be paid concurrently with temporary partial benefits flies in the face of the clear language of section 176.021, subd. 3. Economic recovery compensation is payable for functional loss and therefore is "separate, distinct, and in addition to payment for any other compensation." Because temporary partial disability benefits compensate an injured employee for reduction of wages as a result of a work-related injury, and economic recovery compensation is payable for functional loss, the employee receives no double benefit by being paid both benefits concurrently.

The legislature contemplated the problem of concurrent payments for functional loss and wage loss. The statute specifically prohibits concurrent payment of economic recovery compensation and temporary total disability, Minn.Stat. § 176.021, subd. 3, but contains no such limitation regarding the concurrent payment of economic recovery compensation and temporary partial benefits.

We hold that payments of economic recovery compensation and temporary partial disability benefits may be paid concurrently. The judgment of the Workers Compensation Court of Appeals is affirmed.

Affirmed.