**Eddie T. PARSON,**
**Employee–Respondent,**

v.

**HOLMAN ERECTION COMPANY,**
**INC., and Home Insurance**
**Company, Employer/Insurer–Relators,**

**and**

**L.H. Sowles, Inc. and Home Insurance**
**Company,**
**Employer/Insurer–Respondents.**

**No. C5–87–1037.**

Supreme Court of Minnesota.

Aug. 5, 1988.

Rehearing Denied Sept. 7, 1988.

Robert W. Kettering, Jr., Katherine L. Mackinnon, Ellen L. Maas, Minneapolis, for relators.

Michael J. Healey, St. Paul, for Eddie Parson.

John T. Thul, Minneapolis, for L.H. Sowles.

COYNE, Justice.

The primary issue raised by this appeal from a decision of the Workers' Compensation Court of Appeals is whether an employee whose work-related injury has reached maximum medical improvement, who has been paid economic recovery compensation, but who has no employment is eligible for temporary partial compensation at the temporary total compensation rate. Concluding that temporary partial compensation is not available under these circumstances, we reverse.

On September 11, 1981, the employee suffered an injury to his right knee while employed by Sowles, Inc., as an iron worker on a construction project. Following knee surgery, employee returned to work for Sowles but eventually was laid off. Employee then worked for Holman Erection Company until August 20, 1984, when he sustained a work-related injury to his left knee. Following surgery on the left knee, the surgeon advised employee that, as a result of his injuries, he could not return to construction work. Although he has diligently sought employment, employee has not worked since he was injured in August 1984.

The employee reached maximum medical improvement with respect to his 1984 injury, and Holman served a medical report indicating attainment of MMI on July 17, 1985. Holman continued to pay employee total temporary compensation until October 14, 1985, when it began payment of economic recovery compensation.

The employee filed a claim petition for continuing temporary total compensation. The compensation judge ruled that Holman Erection Company had fulfilled its obligation to the employee by payment of temporary total compensation until 90 days after service of the MMI report followed by payment of economic recovery compensation. The compensation judge also found, however, that each knee injury contributed 50 percent to employee's disability, and he concluded that L.H. Sowles, Inc., the 1981 employer, was liable for continuing temporary total disability benefits calculated at 50 percent of the temporary total compensation rate.

On appeal, the WCCA, sitting en banc, affirmed the liability of L.H. Sowles, Inc., for temporary total disability benefits based on 50 percent of the appropriate compensation rate and, by majority decision, ruled that although the employee's right to temporary total compensation from Holman Erection Company had ceased 90 days after attainment of MMI, Holman was nevertheless liable for continuing temporary partial compensation at 50 percent of the temporary total compensation rate for the duration of employee's total disability. Holman sought review by certiorari, contending that the WCCA decision is contrary to the intent of the so-called "new law."

Since much has been said and written about the reasons for and the import of the 1983 revision of the Workers' Compensation Act, an exhaustive review of the 1983 amendments and their legislative history is hardly necessary here. It may, however, be well to recall that for more than ten years before the 1983 revision of the Act, severe criticism had been directed at Minnesota's system for compensating employees whose work-related permanent partial disability prevented their return to preinjury jobs, even though they were able to do other work. Several detailed studies preceded the amendments: Minnesota Workers' Compensation Study Commission, A Report to the Minnesota Legislature and Governor (1979); Citizens League, Workers' Compensation Reform: Get the Employees Back on the Job (1982); Minnesota Insurance Division, Workers' Compensation in Minnesota: An Analysis with Recommendations (1982); C. Arthur Williams, Jr., R. Azevedo, M. Gonanno, and P. Schumann, Minnesota Workers' Compensation Benefits and Costs: An Objective Analysis (1983). The studies confirmed what many had suspected—that the cost of workers' compensation insurance was higher in Minnesota than in neighboring states and that Minnesota had an unusually high litigation rate. P. Crochiere, *The Plight of the Displaced Employee Improves: An Analysis of the 1983 Changes to Minnesota's Workers' Compensation System*, 12

Wm. Mitchell L.Rev. 623, 639 (1986). The adversary nature of the method for determining the extent of permanent partial disability and the open-ended availability of temporary total disability benefits were identified as major problems.

■ It was in this setting, then, that the Act was revised and the sections germane to the present inquiry were amended. The 1983 amendments to Minn.Stat. § 176.101, subdivisions 1 and 2, appear to be minor. The effect of these changes is, however, of major significance. Subdivision 1 was amended only by the addition of six words, which are underscored below:

Subdivision 1. **Temporary total disability.** For injury producing temporary total disability, the compensation is 66⅔ percent of the weekly wage at the time of injury

\* \* \* \* \* \*

*Subject to subdivisions 3a to 3u* this compensation shall be paid during the period of disability, payment to be made at the intervals when the wage was payable, as nearly as may be.

1983 Minn.Laws ch. 290, § 42.

Those six words limit compensation payable for temporary total disability by the provisions of subdivisions 3a to 3u of section 176.101, which introduce sweeping changes in the compensation payable on account of work-related injuries that cause no permanent disability or that result in permanent partial disability. Included in these 21 related subdivisions 3a to 3u of section 176.101 are such totally new concepts as the "two-tier" system of compensation for permanent partial disability—economic recovery compensation and impairment compensation (subdivisions 3a and 3b) —and maximum medical improvement (subdivision 3e). Subdivision 3d provides that an "employee who has incurred a personal injury shall receive temporary total compensation \* \* \*", and subdivision 3e(a) provides that "temporary total compensation shall cease" 90 days after the employee has reached maximum medical improvement or completed an approved retraining program, whichever is later. The import of the six-word amendment of section 176.101, subd.

1, is that entitlement to temporary total compensation is no longer open-ended; the statute now sets a definite date for termination of temporary total compensation.

Subdivision 2 of section 176.101 was, on the other hand, substantively amended only by deleting the last sentence of the then existing subdivision (deleted portions are lined out and insertions underscored):

Subd. 2. **TEMPORARY PARTIAL DISABILITY.** In all cases of temporary partial disability the compensation shall be 66⅔ percent of the difference between the daily weekly wage of the worker employee at the time of injury and the wage he the employee is able to earn in his the employee's partially disabled condition. This compensation shall be paid during the period of disability except as provided in section 176.101, payment to be made at the intervals when the wage was payable, as nearly as may be, and subject to a maximum compensation equal to the statewide average weekly wage. If the employer does not furnish the worker with work which he can do in his temporary partially disabled condition and he is unable to procure such work with another employer, after reasonably diligent effort, the employee shall be paid at the full compensation rate for his or her temporary total disability.

1983 Minn.Laws c. 290, § 43. Thus, the present statute provides in the event of temporary partial disability for compensation based on the difference between pre- and post-injury wages. All provision for the payment to an unemployed partially disabled employee of compensation at the full compensation rate for temporary total disability has been eliminated from the statute. Subdivision 3h reaffirms the limitation on entitlement to temporary partial compensation implicit in the 1983 amendment to subdivision 2 by providing that "[a]n employee who accepts a job under subdivision 3e or subdivision 3f and begins that job shall receive temporary partial compensation pursuant to subdivision 2, if appropriate."

Moreover, although the parties and the WCCA refer to temporary total disability

compensation and temporary partial disability benefits, terms commonly used to describe periodic benefits payable under the "old law," different terms are used in subdivisions 3a to 3u to describe temporary wage replacement benefits. Subdivision 3e provides for "temporary total compensation"; subdivision 3e(a) mandates termination of "temporary total compensation" 90 days after the employee reaches maximum medical improvement. The only provisions for "temporary partial compensation" are those providing for the payment of "temporary partial compensation" to an employee who works at a job which pays less than the employee's pre-injury employment. *See Patton v. Thompson Elec. Co.,* 420 N.W.2d 596, 597 (Minn.1988). Inasmuch as there is little doubt that the legislature intended the 1983 revision to establish a new format for workers' compensation, we must assume that the legislature intended its new changed language to mean something different than the language of the old statute.

It appears to be generally recognized that in enacting the new statutory scheme, in which cutting off temporary total compensation 90 days after maximum medical improvement is an integral part, the legislature sought to provide economic incentive for employers to provide suitable employment for injured employees, to eliminate the unlimited open-end nature of weekly temporary total compensation, and to encourage employees to accept suitable employment. Altman, Benanav, Keefe & Volz, *Minnesota's Workers' Compensation Scheme: The Effects and Effectiveness of the 1983 Amendments,* 13 Wm. Mitchell L.Rev., 843, 867 (1987). While the limitations on temporary partial compensation are stated with less compelling clarity, the deletion from subdivision 2 of the provision for the payment of compensation to an unemployed temporarily partially disabled employee at the full compensation rate for temporary total disability and the disassociation in subdivisions 3a to 3u of temporary compensation from disability (whether total or partial and whether temporary or permanent) compels the conclusion that the legislature did not intend that temporary partial compensation be available to employees who are not working. Furthermore, to accept the argument that temporary partial compensation may be paid at the temporary total rate under the circumstances of the present case and thus become a substitute for temporary total compensation renders meaningless the mandate in subdivision 3e(a) that temporary total compensation shall cease 90 days after the employee reaches maximum medical improvement. To reinstate the old provisions for temporary partial disability benefits into the present compensatory system not only frustrates the legislative goal of the 1983 revision but vitiates by judicial construction the language the legislature employed to implement that intention.

Like its predecessor, the "new law" is not without flaws. One suspects that in attempting to forestall perceived employee abuse of the workers' compensation system, the legislature may well have created an opportunity for employer abuse. But the justifiable fear that the termination of temporary total compensation and the continued obligation to pay temporary partial compensation to an employee whose post-injury job pays less than his pre-injury job discourages an employer from providing post-injury employment does not justify judicial reconstruction of the Workers' Compensation Act. It is for the legislature, not the Court, to judge the social utility of this statutory system, which has no common law counterpart, to balance the interests of employees and employers, and to make whatever adjustments and corrections it deems appropriate.

We hold, therefore, that on cessation of an employee's entitlement to temporary total compensation 90 days after reaching MMI or 90 days after the end of an approved retraining plan, an employee who, despite diligent search, is unable to find employment is not entitled to temporary partial compensation at the temporary total compensation rate, and we reverse the decision of the WCCA that Holman Erection Company is liable for continuing temporary partial compensation at 50 percent of the temporary total compensation rate.

By notice of review the employee attacks the constitutionality of Minn.Stat. § 176.101 (1984), contending that the limitation of temporary total compensation to 90 days after MMI violates the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and article I, § 8 of the Minnesota Constitution.[1] Specifically, employee asserts that the "new law" limitation of temporary total compensation provides an inadequate substitute remedy for an injured worker in light of the fact that the worker under the Act has given up his right to bring a civil action against the employer.

A law is not to be declared unconstitutional by this court unless palpably so, and only when absolutely necessary. *Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615 (1974). In the context of reviewing the constitutional validity of the Workers' Compensation Act, we have declared that "neither a one-for-one balance nor a reasonable substitute for abrogated common law rights is required for validity." *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909, 914 (Minn.1979). In terms of due process, "[t]he ultimate test is whether the statute is so arbitrary, unreasonable and unjust as to be repugnant to the due process guarantees." *Id.* at 916. Although we recognize constitutional limits to the legislature's power to limit an injured workers' remedy, we do not agree with the employee's claim that he does not have an adequate substitute in this case for his remedies at common law. Employee was paid temporary total compensation until 90 days following service of the MMI report and then received economic recovery compensation. He may also seek compensation payable for permanent total disability if appropriate. Minn.Stat. § 176.101, subd. 3o (1984). In light of these remedies, we hold that the statutory limitation of temporary total compensation does not violate the employee's rights under the due process clause of the Fifth and Fourteenth Amendments of the United States Constitu-tion or under article I, § 8 of the Minnesota Constitution.

The employee also argues that he is entitled to receive temporary total compensation after payment in full of economic recovery compensation. Minn.Stat. § 176.101, subd. 3e(b) (1984), however, provides the opposite: "Once temporary total compensation ceases no further temporary total compensation is payable except as specifically provided by this section." While subdivision 3j of section 176.101 provides for the recommencement of temporary total compensation to an employee who has started working at a job offered under subdivision 3e but who is medically unable to continue because of the injury, the reinstated temporary total compensation is subject to the same 90 day limitations provided by subdivision 3e. Since we cannot create entitlement to compensation for which there is no statutory basis, we hold that entitlement to temporary total compensation does not recommence upon the exhaustion of economic recovery compensation.

Finally, employee contends that if Holman's obligation to pay temporary total compensation ended 90 days after he reached MMI, Sowles is liable for temporary total disability benefits at 100 percent of the compensation rate because the 1981 injury is a substantial contributing factor to his disability. That argument has been rejected. *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304 (Minn.1987). Since, however, Sowles has never challenged the compensation judge's decision that it was liable for payment of temporary total disability benefits at 50 percent of the compensation rate, that determination is not at issue here, and we leave the decision of the WCCA undisturbed.

We, therefore, reverse the award of temporary partial compensation payable by Holman Erection Company at 50 percent of the temporary total compensation rate

1. Minn. Const. art. I, § 8 reads as follows: Every employee is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

while leaving in place the award of temporary total disability benefits payable by L.H. Sowles, Inc. at 50 percent of the appropriate compensation rate.

Reversed.

WAHL, Justice (dissenting in part).

I respectfully dissent. The majority concludes that the 1983 legislature's deletion of the last sentence of subdivision 2 of section 176.101 evinces a clear legislative intent to eliminate temporary partial benefits to unemployed claimants. As we noted in *Gasper v. Northern Star Company*, 422 N.W.2d 727, 730 (Minn.1988), the legislature's intent with respect to temporary partial benefits is far from obvious. Even as amended, subdivision 2 provides benefits for temporarily partially disabled workers; and nothing in the act specifically limits such benefits to only those partially disabled workers who are employed.

At one time, temporary partial disability compensation, which was payable to all temporary partially disabled workers was calculated on the basis of earning capacity. Minn.Stat. § 176.11(b) (1941). *See Enrico v. Oliver Iron Mining Co.*, 199 Minn. 190, 271 N.W. 456 (1937). The statutory provision was subsequently amended to provide that the commission would fix the rate of compensation for unemployed temporarily disabled workers; and this rate was to be based on the percentage of disability. Temporary partial disability compensation for other workers was still calculated on the basis of earning capacity. 1945 Minn. Laws ch. 389, Sec. 1. The provision was again amended to provide that unemployed temporarily partially disabled workers, who made a diligent effort to find work, would be paid at the temporary total rate. Temporary partial disability compensation for other workers continued to be based on earning capacity. 1974 Minn.Laws ch. 486, Sec. 2. In 1983, the sentence making reference to the calculation of benefits for unemployed workers was eliminated. Unlike the majority, however, I am not convinced that this deletion demonstrates a legislative intent to entirely eliminate weekly benefits for temporarily partially disabled workers who are unemployed because of their work-related disabilities.

In my view, a fair reading of this deletion leads to the conclusion that the amendment merely changed the basis for the calculation of benefits for temporarily partially disabled unemployed workers. Instead of calculating benefits at the temporary total rate subject to a diligent work search, such benefits are to be calculated on the basis of earning capacity. We have consistently held the calculation of benefits under that portion of subdivision 2 left after amendment is to be based on earning capacity, not post-injury wages. *Owens v. Pako Corp.*, 386 N.W.2d 711, 715 (Minn. 1986); *Olson v. Midwest Printing Co.*, 347 N.W.2d 43, 46 (Minn.1984); *Morehouse v. Geo. A. Hormel & Co.*, 313 N.W.2d 8, 10 (Minn.1981). In view of the history of the much disputed statutory provision, I believe that if the legislature intended benefits for temporarily partially disabled workers to be limited only to those who have managed to find employment, it would have said so. I feel that it is improper for us to supply the limitation. *Gasper*, 422 N.W.2d at 730.

The majority appears to imply that providing temporary partial benefits for temporarily partially disabled and unemployed workers will "frustrate" the overall legislative intent of 1983 amendments to the act. However, it seems to me that the allowance of temporary partial benefits to all temporarily partially disabled workers promotes the goal of the 1983 amendments to quickly reintegrate injured workers back into the workforce by economically forcing the employer to get the employee back into the workforce (either with the employer or elsewhere) or else pay significantly greater benefits.

For the foregoing reasons, I would hold that under subdivision 2 of section 176.101 as amended in 1983, all temporarily partially disabled workers are eligible for weekly benefits to be calculated on the basis of earning capacity as distinguished from post-injury wages.

YETKA, Justice (dissenting).

I join in the dissent of Justice WAHL.

POPOVICH, Justice (dissenting).

I join in the dissent of Justice Wahl. My review of the 1983 contemporaneous legislative history fails to disclose any meaningful discussion or insights on the exact issue involved here. I would affirm the Workers Compensation Court of Appeals' holding that TPD is payable pursuant to Minn.Stat. § 176.101, subd. 2. A clear indication of legislative intent to eliminate TPD benefits to workers who are unemployed because of work-related disability is necessary. I find such indication lacking and even the majority states "the limitations on temporary partial compensation are stated with less compelling clarity." Under the interpretation being enunciated now, the opportunity for employer abuse is apparent. As the legislature grapples with revisions to the workers compensation laws, this flaw should be rectified.