**Richard JERDE, Relator,**

v.

**ADOLFSON AND PETERSON and U.S. Fidelity & Guaranty Ins. Co., Respondents.**

**No. C4–91–1969.**

Supreme Court of Minnesota.

May 22, 1992.

William H. Getts, Minneapolis, for relator.

Kirk C. Thompson, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for respondents.

## OPINION

KEITH, Chief Justice.

This workers' compensation matter is before us by certiorari on the relation of employee Richard Jerde to review a decision of the Workers' Compensation Court of Appeals reversing an award of economic recovery benefits which was based upon a finding that post-injury employment did not meet the requirements of Minn.Stat. § 176.101, subd. 3e(b).[1] We reverse and reinstate the award of benefits.

---

1. Minn.Stat. § 176.101, subd. 3e(b) (1990) provides in relevant part:

    If at any time prior to the end of the 90–day period described in clause (a) the employee retires or the employer furnishes work to the employee that is consistent with an approved plan of rehabilitation and meets the requirements of section 176.102, subdivision 1, or, if no plan has been approved, that the employee can do in the employee's physical condition

Richard Jerde sustained a compensable neck injury on May 8, 1984, while working for Adolfson & Peterson as a brickwasher. This was a union job that paid a weekly wage of $675.20 plus fringe benefits. The injury, an intervertebral cervical disc herniation, required fusion surgery; and the resulting permanent impairment was rated at 32.38% to the body as a whole. Although employee's resulting disability precluded a return to his former employment as a construction laborer or bricklayer, in June 1987, employee's neurologist indicated employee had reached maximum medical improvement (MMI) and could return to lighter work with restrictions. Service of an MMI report, however, was not accomplished until August 1988.

Because of a dispute over primary liability, the employer/insurer denied employee's requests for rehabilitation services. In April 1988, through his own efforts, employee found a part-time job selling pull-tabs, a job that paid an average weekly wage of $170 and provided neither fringe benefits nor opportunity for future income. Renewed requests for rehabilitation as well as a compensation judge's order directing provision of these services went unheeded until a dispute over the extent of permanency was finally adjudicated in mid–1989. Meanwhile, employee filed a claim for economic recovery compensation (ERC). In November 1989, employer/insurer agreed to furnish rehabilitation services provided employee defer his claim for ERC pending completion of rehabilitation. In July 1990, after employee's qualified rehabilitation consultant indicated it was unlikely a job search would result in a better job at that

time, counsel for employee requested reinstatement of the ERC claim.

At the hearing on the ERC claim, the parties stipulated that the pull-tab job provided work employee could do in his partially disabled condition and was the "best job that employee [could] do economically at [that] time." Because the matter was submitted on stipulated facts, no testimony or other evidence was presented as to the nature of rehabilitation efforts already made or whether consideration had been given to retraining. The compensation judge found employee's post-injury employment did not meet the requirements of subdivision 3e of section 176.101 so that permanent partial disability compensation would be payable as ERC. On appeal, the Workers' Compensation Court of Appeals reversed by majority decision.

■■■ Under Minn.Stat. § 176.101, subd. 3e(b), payment of temporary total benefits stops and payment of impairment compensation begins if the employee has work that is consistent with a plan of rehabilitation and meets the requirements of section 176.-102, subdivision 1.[2] In the absence of approved rehabilitation, impairment compensation is still payable if the job is one that the employee can do and that "produces an economic status as close as possible to that the employee would have enjoyed without the disability." If a subdivision 3e job offer has not been made within 90 days of MMI or completion of approved retraining, compensation for the permanent impairment is payable as economic recovery compensation instead. Minn.Stat. § 176.101,

and that job produces an economic status as close as possible to that the employee would have enjoyed without the disability, or the employer procures this employment with another employer or the employee accepts this job with another employer, temporary total compensation shall cease and the employee shall, if appropriate, receive impairment compensation * * *.

In substance, this was the provision in effect at the time of employee's injury. *Cassem v. Crenlo, Inc.,* 470 N.W.2d 102, 107, n. 5 (Minn.1991).

2. Minn.Stat. § 176.102, subd. 1 (1990) provides that rehabilitation—

is intended to restore the injured employee, through physical and vocational rehabilita-

tion, so the employee may return to a job related to the employee's former employment or to a job in another work area which produces an economic status as close as possible to that the employee would have enjoyed without disability. Rehabilitation to a job with a higher economic status than would have occurred without disability is permitted if it can be demonstrated that this rehabilitation is necessary to increase the likelihood of reemployment. Economic status is to be measured not only by opportunity for immediate income but also by opportunity for future income.

subd. 3p (1990). This "two-tier" system was designed to restructure the delivery of permanent partial disability benefits to "make it more consistent with good rehabilitation principles." Altman, Benanav, Keefe & Volz, *Minnesota's Workers' Compensation Scheme: The Effects and Effectiveness of the 1983 Amendments,* 13 Wm. Mitchell L.Rev. 843, 864–65 (1987).[3] The primary obligation to procure subdivision 3e employment lies with the employer. *Id.* at 878.

In short, it appears the legislature intended that a subdivision 3e job be one reasonably likely to accomplish appropriate rehabilitation objectives. The general "purpose of rehabilitation is to arm injured workers who are disabled from returning to their preinjury jobs with the skills required to return them to jobs related to their former employment or to jobs that produce an economic status as close as possible to that which the employee would have enjoyed without the disability and also to encourage injured workers to increase their employability by acquiring such skills through training or retraining." *Langa v. Fleischmann–Kurth Malting Co.,* 481 N.W.2d 35, 37 (Minn.1992). *See also Wirtjes, by Greenfield v. Interstate Power Co.,* 479 N.W.2d 713, 715 (Minn.1992) (rehabilitation is directed toward returning the disabled employee to an established pre-injury employment status and to discontinuing workers' compensation benefits).

In Jerde's case, it seems to us the compensation judge quite properly considered all of those factors typically relevant in rehabilitation matters, such as pre-injury economic status, age, education, skills, disability, etc., *see, e.g.,* Minn.R. 5220.0100, subp. 13 (1991); and in our opinion, there was sufficient evidence to support the determination that employee was entitled to receive economic recovery compensation because his post-injury employment did not meet the requirements of subdivision 3e of section 176.101. *See Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54 (Minn.1984).[4] We therefore reverse the decision of the Workers' Compensation Court of Appeals and reinstate the award of economic recovery compensation.

Reversed and reinstated.

The employee is awarded attorney fees of $800.

YETKA, J., took no part in the consideration or decision of this case.

---

**3.** Prior to 1979, vocational rehabilitation consisted of retraining under the auspices of the Department of Vocational Rehabilitation. If retraining would "significantly reduce or prevent the decrease in employability resulting from the injury," retraining was available. Minn.Stat. § 176.101, subd. 7 (1978). In 1979, the legislature enacted mandatory rehabilitation provisions; but in response to the insurance industry's concern that some employees were being retrained far beyond the pre-injury economic status, the legislature directed that " '[v]ocational rehabilitation shall train an employee so he may be returned to a job related to his former employment or to a job in another work area which produces an economic status as close as possible to that he would have enjoyed without disability.' " J. Benanav, *Workers' Compensation Amendments of the 1979 Legislature,* 6 Wm. Mitchell L.Rev. 743, 746–47 (1980) (quoting Act of June 7, 1979, ch. 3, § 36, 1979 Minn.Laws Ex.Sess. 1256, 1278 (codified at Minn.Stat. § 176.102(1))). The basic rehabilitation concepts were replicated in the two-tier benefits system in 1983. *See* 13 Wm. Mitchell L.Rev. at 870, n. 109 (1987).

**4.** Employer/insurer argue that an award of economic recovery compensation here would be contrary not only to the language of subdivision 3e, section 176.101, but also to the underlying policies of the 1983 amendments. But given the central role of rehabilitation in the two-tier permanent partial benefits system, to award impairment compensation where rehabilitation was withheld pending protracted litigation hardly seems consistent with the underlying intent of the statutory scheme either. As we have said before, this two-tier system "is not without flaws." *Parson v. Holman Erection Co., Inc.,* 428 N.W.2d 72, 76 (Minn.1988). Certainly, there are problems with tying permanent partial disability compensation to employment status at MMI; but that does not "justify judicial reconstruction of the Workers' Compensation Act. It is for the legislature, not the Court, to judge the social utility of this statutory system, which has no common law counterpart, to balance the interests of employee and employers, and to make whatever adjustments and corrections it deems appropriate." *Id.*