David KEKLAH, Relator,

v.

GEBERT'S FLOOR COVERINGS
and American Policyholders
Ins. Co., Respondents.

No. C7–93–1193.

Supreme Court of Minnesota.

Jan. 14, 1994.

Jane McMahon, Horvei, Gubbe & Krueger, P.A., Roseville, for relator.

Peter M. Banovetz, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for respondents.

COYNE, Justice.

The Workers' Compensation Court of Appeals reversed the compensation judge's determination that employee worked in the construction industry and that he was entitled to economic recovery compensation. We reverse and remand for further proceedings.

In 1979, David Keklah started working as a carpet installer with a commercial installation company that dealt primarily in new construction. He was a member of a union, Twin Cities Carpet and Linoleum and Resilient Tile Layers, Local 596, a division of the United Brotherhood of Carpenters and Joiners of America. In 1987, he started working for Gebert's Floor Coverings, a smaller company that was involved mainly in commercial remodeling. Whether the project involved new construction or remodeling of an existing building, the carpet layers would come in and work with and alongside the painters, electricians, plumbers and finish carpenters.

On December 1, 1988, Keklah sustained a compensable low back injury, and the employer paid various compensation benefits, including a two year retraining course in electronics at a cost of around $7,350. In July 1991, employee started working as an electronics technician at an hourly wage of $8, and by September 1992, after two raises, he made $9.50 per hour.[1]

The compensation judge found that Keklah was engaged in the construction industry at the time of injury and computed the weekly wage and temporary total/tempo-

---

1. At the time of injury, employee's hourly wage was $17.48.

rary partial compensation on the basis of the statutory provision applicable to persons engaged in the construction industry.[2] The compensation judge also awarded economic recovery compensation, concluding that if the construction industry wage basis applied, employee's post-injury job was not economically suitable; but he also said that if his "holding on the wage issue is incorrect and the 26-week rule" applied, impairment compensation was payable instead as employee's post-injury earnings were 75% of his actual average weekly wage over the 26 weeks preceding his injury.

In reversing the compensation judge's computation of benefits pursuant to the construction industry wage provision, the WCCA cited *Julius v. Lenz*, 215 Minn. 106, 9 N.W.2d 255 (1943) and cases from other jurisdictions pertaining to insurance contracts and tax rules in support of its conclusion that the construction industry formula applies only to those engaged in the building or erection of a new structure: "there should be an element of new structure before the work involved should be considered part of 'construction.' " *Keklah v. Gebert's Floor Coverings*, —— Minn. Workers' Comp.Dec. ——, slip op. at 9. The WCCA was of the opinion that where "the project the employee was actually engaged [in] on the date of injury was refurbishing, improving and remodeling an existing structure," he was "not engaged in the construction industry." *Id.* at ——, slip op. at 10. On the other hand, the WCCA thought that "employee's [carpet laying] work at Pink Companies, [his former employer], was, by contrast, to install carpet in newly built structures and was clearly in the 'construction industry.' " *Id.* at ——, slip op. at 9. The cases on which the WCCA relied, however, have nothing to do with the calculation of the wage basis for purposes of work-

ers' compensation.[3] More to the point, though, we can ascertain no rational basis for saying that carpenters, bricklayers, plumbers, electricians, roofers, painters, as well as carpet layers, are members of the construction industry if the project on which they are presently engaged is the construction of a completely new building but that they step outside of the construction industry whenever the current project calls for the remodeling, renovation or major refurbishing of an existing structure. This is not to say that every worker who performs repair work on an existing structure or who lays carpet is a member of the construction industry, it is simply to say that we cannot agree that although this employee worked in the construction industry while he was employed by his previous employer to lay carpet in new buildings, the compensation judge erred when he found that the employee continued to work in the construction industry when he performed the same kind of work under the same conditions for a different employer in connection with the remodeling of an existing building.

■ We are of the opinion, however, that the imputed wage for a worker in the construction industry calculated pursuant to Minn.Stat. § 176.011, subd. 3 (1992), is not an appropriate basis for determining the economic suitability of a post-injury job of a worker injured while working in the construction industry. The statutory provision for the construction industry weekly wage affords a "simple method for computing the wage basis in the construction industry as full-time employment, rather than averaging the wages over one-half the year," *Clabo v. Bor–Son Construction Co.*, 481 N.W.2d 47, 48 (Minn.1992), and the amounts of temporary total and temporary partial disability

---

**2.** When wages are irregular or difficult to determine, wages are averaged over the 26 weeks preceding the injury unless the employee is engaged in the construction industry, mining industry "or other industry where the hours of work are affected by seasonal conditions," in which case the weekly wage is not less than five times the daily wage. Minn.Stat. § 176.011, subds. 3 and 18 (1992). The imputed full-time wage basis for certain industries applies without additional proof that the particular employment is in an industry that is affected by seasonal conditions.

*Berry v. Walker Roofing Co.*, 473 N.W.2d 312, 315 (Minn.1991).

**3.** For example, in *Julius v. Lenz*, 215 Minn. 106, 9 N.W.2d 255 (1943), it was held that a village ordinance declaring it unlawful to build or construct wooden or combustible buildings within certain designated fire limits did not make it unlawful to make repairs upon existing buildings located within that zone.

benefits and permanent total and permanent partial disability benefits are all based on the wage as calculated. Nevertheless, the imputed wage of a construction industry worker is artificial or fictitious and does not reflect the worker's actual pre-injury economic status. For that reason, it seems to us that to declare a post-injury job "unsuitable" for the sole reason that it does not produce an economic status greater than that which the worker actually enjoyed before injury and then to base an award of economic recovery compensation on the "unsuitability" of the post-injury job is improper. A construction worker's pre-injury economic status should be measured by the worker's actual income earned annually prior to injury. Certainly, the comparison of pre-injury wages with present post-injury wages, of pre-injury and post-injury opportunity for increased income in the future, and of fringe benefits such as vacation and health insurance enters into the determination of the suitability of the post-injury job. It does not, however, constitute the sole criterion for deciding whether a post-injury job meets the requirements of Minn.Stat. § 176.101, subd. 3e(b) (1992). Various other factors must be considered: the employee's age, education, interests, aptitudes, skills, whether the employee has participated in a retraining program, and the employee's general employment history. *See Jerde v. Adolfson and Peterson,* 484 N.W.2d 793, 795 (Minn.1992); Minn.Rule 5220.0100, subd. 34 (1992). Although the employee contends that the compensation judge considered these factors in reaching his decision, the compensation judge stated that his award of permanent partial disability payable as economic recovery compensation was based primarily on the comparison of the disparity between the employee's imputed wage calculated pursuant to Minn.Stat. § 176.011, subd. 3 (1992), and his post-injury wage. For that reason, we remand the matter for the compensation judge's determination whether employee's post-injury job meets the requirements of Minn.Stat. § 176.101, subd. 3e(b) (1992), with direction that, at the option of the compensation judge, additional evidence may be received and considered.

Reversed and remanded.

Employee is awarded $400 in attorney fees.