Frank J. BRUNS, Jr., Respondent,

v.

CITY OF ST. PAUL, Self–Insured, Relator.

No. C8–96–1072.

Supreme Court of Minnesota.

Oct. 31, 1996.

Rehearing Denied Dec. 2, 1996.

---

Timothy S. Crom, Thomas L. Cummings, Jardine, Logan & O'Brien, P.L.L.P., St. Paul, for relator.

Howard S. Carp, Borkon, Ramstead, Mariani & Letourneau, Ltd., Minneapolis, for respondent.

## OPINION

ANDERSON, Justice.

This case comes to us on certiorari for review of a decision of the Workers' Compensation Court of Appeals affirming the compensation judge's award of economic recovery compensation to respondent Frank J. Bruns, Jr. We reverse on the ground that the employer, relator City of St. Paul, should have another opportunity and additional time to offer Bruns suitable post-injury employment.

Frank J. Bruns, Jr. worked as a truck mechanic for the City of St. Paul. On April 23, 1992, Bruns' right hand became caught in the ladder of a fire truck, resulting in the loss of his fingers and thumb. Surgeons were able to re-implant only two of the fingers. The City accepted liability for the avulsion injury and furnished Bruns with various benefits, including retraining in keyboarding. Approximately two years later, Bruns reached maximum medical improvement from his injuries, and within 90 days of that date, the City offered Bruns two positions, one involving keyboarding and the other in vehicle maintenance. The parties later agreed that the keyboarding position was

unsuitable. Bruns accepted the vehicle maintenance position, which his physician approved with some modifications, and returned to work on September 26, 1994.

The vehicle maintenance position involved operating a high pressure hose to clean vehicles, lubricating vehicles with a grease gun, and moving large barrels of chemicals. It proved more physically demanding than either Bruns or the City had anticipated, and Bruns developed soreness in his left shoulder. He did inform his supervisor of his shoulder problems, but did not ask for assistance or for a less physical job. Bruns was referred to an orthopedic specialist, who diagnosed his condition as an impingement syndrome due to overuse of his left arm and hand. In April 1995, after Bruns' second visit, the specialist recommended permanent weight restrictions on Bruns' lifting, with no lifting above shoulder level. In May 1995, Bruns terminated his employment with the City because he believed his work activities were inappropriate.

Bruns filed a claim petition for permanent partial disability benefits, payable as economic recovery compensation under Minn. Stat. § 176.101, subd. 3p (1992) (repealed 1995), rather than the less-favorable impairment compensation to which he was otherwise entitled under subd. 3b of that statute.[1] He claimed that he met the statutory requirements for economic recovery compensation because the vehicle maintenance job that the City had offered him within 90 days of reaching maximum medical improvement was unsuitable under Minn.Stat. § 176.101, subd. 3e. At the hearing, Bruns' qualified rehabilitation consultant testified that the actual post-injury work activities required in the vehicle maintenance position were more expansive than those contained in the job description which he initially analyzed and approved, and that, therefore, the vehicle maintenance position was unsuitable. Bruns testified that he still wanted to work and would continue working for the City if it had a position that could accommodate his disabilities.

The compensation judge concluded that Bruns had sustained a 46.12% permanent partial disability, payable as economic recovery compensation because Bruns had not returned to work in a suitable position within 90 days after he reached maximum medical improvement from his hand injury. *See* Minn.Stat. § 176.101, subd. 3p (1992) (repealed 1995). The City appealed to the Workers' Compensation Court of Appeals (WCCA), which lowered the disability rating to 44.60% and affirmed the award of economic recovery compensation. The City now appeals to this court, claiming that Bruns was offered employment suitable at the time it

---

1.  Under the law applicable at the time of Bruns' injury, if the injured worker did not receive an offer of employment that was physically and economically suitable under the criteria of Minn. Stat. § 176.101, subd. 3e(b) within 90 days of reaching maximum medical improvement, the employee was entitled to permanent partial disability benefits payable as economic recovery compensation. *See* Minn.Stat. § 176.101, subd. 3p. (1992) (repealed 1995). If the employer did furnish such employment to the injured worker, the worker received benefits payable as impairment compensation. *See id.*, subd. 3b, 3e(b).

This court has noted that "[w]hether economic recovery benefits are owed rather than impairment compensation makes a monetary difference." *Cassem v. Crenlo, Inc.*, 470 N.W.2d 102, 105 (Minn.1991). The amount of impairment compensation is calculated by matching the percentage of permanent disability with a corresponding dollar figure; the higher the percentage of disability, the higher the scheduled dollar amount to which the injured worker is entitled. Minn.Stat. § 176.101, subd. 3b. Economic re-

covery compensation, however, is calculated as 66–2/3% of the injured worker's pre-injury wage over a scheduled period of weeks; the higher the percentage of disability, the longer the payments continue. *Id.*, subd. 3a. Economic recovery compensation must not be less than 120% of the amount of impairment compensation which the worker would have received if impairment compensation had been paid. *Id.*, subd. 3t. Because the legislature did not amend the impairment compensation schedule since its enactment in 1983, an "ever-widening gap" between the amounts payable as economic recovery compensation and those payable as impairment compensation ensued. *Gackstetter v. Johnson/Midwest Coca Cola Bottling*, 511 N.W.2d 439, 441 n. 5 (Minn.1994).

In 1995, the legislature eliminated the two-tier system described above in favor of a uniform schedule for all permanent partial disability compensation, applicable to injuries occurring after October 1, 1995. *See* Act of May 25, 1995, ch. 231, art. 1, §§ 19–21, 1995 Minn. Laws 1979, 1989–91, *codified at* Minn.Stat. § 176.101, subd. 2a (Supp.1995).

was offered, and that economic recovery compensation was inappropriate because the City had no opportunity to further modify Bruns' position before he terminated his employment with the City.

On appeal, this court must view the facts in the light most favorable to the findings of the WCCA, and will not disturb the WCCA's findings unless they are manifestly contrary to the evidence or the evidence clearly requires reasonable minds to conclude otherwise. *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 61 (Minn.1984). When reviewing questions of law determined by the WCCA, this court is free to exercise its independent judgment. *Morrisette v. Harrison Int'l Corp.,* 486 N.W.2d 424, 426 (Minn.1992).

We agree with the WCCA's conclusion that substantial evidence supports the compensation judge's finding that the vehicle maintenance position was unsuitable when the City offered it to Bruns. But we also agree with the City's contention that under these facts an award of economic recovery compensation is premature. The City contends that an employer who has made extensive efforts to return an injured worker to a suitable position should have an opportunity to further modify the post-injury position if it proves to be unsuitable. We agree.

This court recently considered an analogous situation in *Manderfeld v. J.C. Penney,* 526 N.W.2d 52 (Minn.1995). In *Manderfeld,* an employer offered alternate employment to an injured worker, but the worker rejected the offer. The employer's insurer then initiated proceedings to discontinue paying the worker wage-loss benefits on the ground that the worker had rejected an employment offer meeting the criteria then contained in Minn. Stat. § 176.101, subd. 3e or 3f. The compensation judge found that the offer was suitable under subd. 3e. The worker then unsuccessfully attempted to accept the offer within 14 days of that determination. Subsequently, the compensation judge denied the worker's new claim for rehabilitation expenses under

Minn.Stat. § 176.101, subd. 3n on the ground that she had forfeited the benefits by failing to accept a suitable offer within 14 days of receiving the offer under subd. 3e. The WCCA affirmed the compensation judge's decision, and on appeal, we reversed.

In *Manderfeld,* we concluded that basic fairness required that a worker have reasonable notice and an opportunity to be heard before the worker's benefits are deemed forfeited. *Id.* at 54. Consequently, we held that the 14-day period for acceptance under subd. 3e is tolled when a party seeks review of a determination that a job offer meets the statutory criteria, and that the 14-day period for acceptance commences when a final determination on the issue is filed. *Id.* We emphasized in *Manderfeld* that "substantial due process considerations" were at stake. *Id.*

The substantial due process considerations we described in *Manderfeld* apply to the City in this case. The City put forth extensive efforts to return Bruns to suitable post-injury work, and the position initially appeared suitable. The City should not be penalized because the actual work activities did not conform to the parties' original expectations. Instead, we conclude that the City should have another opportunity and additional time to offer Bruns a suitable position before consideration of an award of economic recovery compensation in lieu of impairment compensation. Therefore, we reverse the award of economic recovery compensation and hold that if an employer makes extensive efforts to offer a suitable employment position to an injured worker, and subsequently seeks review of a determination that the offer was unsuitable under Minn.Stat. § 176.101, subd. 3e, the 90-day period within which to offer a suitable position is tolled until a final determination on the issue is filed. Thus, if it so chooses, the City may have an additional 90 days from the filing date of this decision to develop and offer Bruns employment that meets the criteria of Minn.Stat. § 176.101, subd. 3e.[2]

2. If, prior to the expiration of the 90-day period, Bruns elects to retire, or if he has retired and chooses not to return to work, he will be entitled

to permanent partial disability benefits payable as impairment compensation under Minn.Stat. § 176.101, subd. 3e(b). *See Mattson v. State*

The WCCA's decision is in all other respects affirmed.

Affirmed in part, reversed in part.

*Dep't of Public Safety,* 494 N.W.2d 884, 884–85    (Minn.1993).