STATE OF MINNESOTA

IN SUPREME COURT

A23-0543
A23-0544

Workers' Compensation Court of Appeals      Procaccini, J.
                Took no part, Hennesy, J.

Daniel Johnson (A23-0543),

      Relator,

vs.                Filed:  May 29, 2024
                Office of Appellate Courts

Concrete Treatments, Inc., and
Technology Insurance Company,

      Respondents,

and

Furniture & Things, Inc., and
SFM Mutual Insurance Company,

      Respondents.

Daniel Johnson (A23-0544),

      Respondent,

vs.

Concrete Treatments, Inc., and
Technology Insurance Company,

      Relators,

and

Furniture & Things, Inc., and
SFM Mutual Insurance Company,

      Respondents.

1

James A. Batchelor, Mottaz & Sisk Injury Law, Coon Rapids, Minnesota, for relator/respondent Daniel Johnson.

Christine L. Tuft, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for relators/respondents Concrete Treatments, Inc. and Technology Insurance Company.

M. Elizabeth Giebel Mandel, Lynn, Scharfenberg & Hollick, Minneapolis, Minnesota, for respondents Furniture & Things, Inc. and SFM Mutual Insurance Company.

_____

S Y L L A B U S

1.    An injured employee's right to assert a direct claim for unpaid medical expenses is not precluded by a medical provider's failure to intervene in a pending workers' compensation proceeding under Minnesota Statutes section 176.361 (2022).

2.    The compensation judge's findings that the injured employee sustained a permanent work injury on October 1, 2018, and the compensation judge's apportionment determination, are not manifestly contrary to the evidence.

Affirmed in part, reversed in part, and remanded.

O P I N I O N

PROCACCINI, Justice.

In this workers' compensation case, we are asked to decide two issues: First, is Daniel Johnson entitled to assert a direct claim for unpaid medical bills owed to two non-intervening medical providers? Second, were the compensation judge's factual findings about Johnson's work-related injury in October 2018 manifestly contrary to the

2

evidence? The Workers' Compensation Court of Appeals (WCCA) affirmed the compensation judge's factual findings but, contrary to the compensation judge, held that Johnson could not assert a direct claim for unpaid medical expenses. Because we conclude that Johnson is entitled to assert a direct claim for unpaid medical expenses and that the compensation judge's findings regarding the October 2018 injury are not manifestly contrary to the evidence, we affirm in part and reverse in part the WCCA's decision, and we remand to the WCCA to determine whether further factual findings are necessary regarding Johnson's direct claim for unpaid medical expenses.

**FACTS**

In March 2005, employee Daniel Johnson injured his low back when lifting an entertainment center while working for Furniture & Things, Inc.[1] Johnson sought medical treatment for his low back and leg pain, and an MRI scan showed an L5-S1 disc herniation. He received a lumbar epidural steroid injection, which improved his symptoms for a time. Furniture & Things accepted liability for the injury and paid workers' compensation benefits. After his injury, Johnson continued to work for Furniture & Things until 2011. Throughout this time, Johnson's low back and leg pain persisted, which he managed with self-care treatments such as over-the-counter medication and physical therapy exercises.

---

[1] For simplicity, we refer to Furniture and Things, Inc. and its workers' compensation insurer, SFM Mutual Insurance Company, collectively as "Furniture & Things."

In 2016, Johnson began working for Concrete Treatments, Inc.[2] Johnson's position involved managing a crew and completing some manual labor, including running a concrete grinder. He avoided heavy lifting to prevent aggravating his symptoms from the 2005 injury. In October 2018, Johnson sustained another injury to his low back while bending down to remove a door hinge. He felt shooting pain and stiffness in his low back, with radiating pain in his legs. Johnson kept working and did not immediately seek medical treatment, but about a month later, he was treated by Dr. Garry Banks at Twin Cities Orthopedics (TCO). Johnson reported that he had experienced chronic low back pain since his 2005 work injury, which became unmanageable with self-care treatments after the October 2018 injury. Dr. Banks diagnosed Johnson with a lumbar strain, though he also suggested that Johnson might have a new disc herniation. Dr. Banks recommended an MRI scan if Johnson's pain did not improve in the next two months. Johnson testified that after this visit with Dr. Banks, he returned to "baseline." He did not receive an MRI immediately after the October 2018 injury.

On December 27, 2018, Johnson was involved in a car accident while driving a company-owned car. Shortly after, Johnson sought chiropractic care with Dr. Howard Johnson at Power Within Chiropractic (PWC) for neck pain related to the car accident and for his continuing low back and leg pain. Johnson sought no other medical treatment throughout 2019 and 2020. He continued to work for Concrete Treatments in the same

---

[2]      We refer to Concrete Treatments, Inc. and its workers' compensation insurer, Technology Insurance Company, collectively as "Concrete Treatments."

4

position, without restrictions, but he testified that he obtained assistance in performing certain activities, including repetitive heavy lifting.

In April 2021, Johnson returned to Dr. Johnson at PWC because his low back and leg pain severely increased. He could not sit in a car with his feet forward because of shooting pain in both of his legs. Johnson underwent an MRI scan, which revealed a moderate-sized central disc extrusion at L5-S1 contributing to severe spinal canal stenosis with compression of the cauda equina nerve roots. Dr. Johnson recommended that Johnson consult a spine specialist. Johnson then returned to Dr. Banks, who recommended surgery. In May 2021, Dr. Banks performed the surgery. Following surgery and additional physical therapy, Johnson's low back and leg pain improved, and he eventually resumed working at Concrete Treatments.

Johnson filed a workers' compensation claim petition in May 2021, listing the March 2005, October 2018, and December 2018 injuries. He sought temporary total disability benefits, rehabilitation assistance, and payment of outstanding medical expenses, including those for Dr. Johnson's treatment at PWC and for the MRI scan and surgery performed by Dr. Banks at TCO.

Johnson notified his medical providers of their right to intervene in the workers' compensation proceeding in accordance with statutory requirements. TCO and PWC did not respond or move to intervene. In September 2021, on a motion by Furniture & Things, the compensation judge issued an order extinguishing the potential intervention interests of TCO and PWC. Reciting language from Minnesota Statutes section 176.361, subdivision 2(a) (2022), which governs intervention, the extinguishment order stated that

5

"the potential intervention interests of . . . [TCO] and [PWC] . . . are hereby extinguished and said potential intervenors may not collect, or attempt to collect the extinguished interest from the employee, employers, insurers, or any government program."  Neither Johnson nor the affected providers objected to the order.

The matter proceeded to a hearing in April 2022.  At the hearing, Johnson withdrew his claim for the December 2018 injury.  Johnson also asserted a direct claim for payment of the medical expenses he incurred at TCO and PWC.  Counsel for both employers argued that because those providers' interests were extinguished by the court order, Johnson's right to assert a direct claim for payment was also eliminated.

At the hearing, Johnson submitted the narrative reports of Dr. Banks and Dr. Johnson; Furniture & Things submitted an independent medical examination (IME) report by Dr. Mark Engasser; and Concrete Treatments submitted an IME report by Dr. Eric Deal. In his narrative report, Dr. Banks concluded that both the 2005 injury and the October 2018 injury substantially contributed to Johnson's low back condition and need for surgery, and he apportioned liability as 50 percent to the 2005 injury and 50 percent to the October 2018 injury.  Dr. Johnson concluded that the 2005 injury was the initial trauma for Johnson's low back condition and that the effects of the injury were never fully resolved.  Dr. Johnson apportioned liability as 40 percent to the 2005 injury and 60 percent to the December 2018 car accident.  He did not address the October 2018 injury.

In his IME report, Dr. Engasser concluded that the 2005 and October 2018 work-related injuries were permanent and substantial contributing causes of Johnson's low back condition and need for medical care.  Dr. Engasser also concluded that Johnson's

6

December 2018 car accident injury was minor and temporary and not a substantial contributing factor to his low back condition. Dr. Engasser apportioned liability as 40 percent to the 2005 injury and 60 percent to the October 2018 injury. Dr. Deal concluded in his IME report that no substantial injury occurred in October or December 2018 and that those injuries were self-limited exacerbations of a preexisting condition arising from the March 2005 injury. Dr. Deal apportioned liability as 100 percent to the March 2005 injury.

The compensation judge found the opinions of Dr. Banks and Dr. Engasser credible and persuasive, and he accepted Dr. Johnson's opinion as it related to the 2005 injury. The compensation judge rejected Dr. Deal's opinion as unpersuasive, given Johnson's lack of medical treatment between 2005 and 2018. Based on the expert opinions, along with Johnson's medical records and testimony, the compensation judge found, in relevant part, that (1) Johnson sustained a permanent work-related injury in October 2018; (2) the March 2005 and the October 2018 work injuries were substantial contributing factors to Johnson's need for medical care and surgery to treat his low back condition; and (3) responsibility for Johnson's low back condition is apportioned 40 percent to the March 2005 injury and 60 percent to the October 2018 injury. The compensation judge also concluded that Johnson was entitled to make a direct claim for unpaid medical expenses owed to TCO and PWC because those medical providers did not intervene.

Concrete Treatments appealed the compensation judge's findings on liability and conclusion regarding Johnson's right to assert a direct claim for unpaid medical expenses. In a split decision, the WCCA affirmed in part and reversed in part. The WCCA

7

unanimously affirmed the compensation judge's determination that Johnson sustained a permanent work-related injury in October 2018 and that the injury was a substantial contributing factor to his permanent low back condition and need for surgery. The WCCA also unanimously affirmed the compensation judge's apportionment determination. But the WCCA divided on Johnson's entitlement to assert a direct claim for medical expenses. The WCCA majority, relying on its own precedent, reasoned that once the potential intervenors' interests had been extinguished, Johnson could not bring direct claims on the providers' behalf unless Johnson's attorney unequivocally established that he was representing Johnson, TCO, and PWC at the hearing. Because Johnson's attorney made no attempt to establish such representation, the majority reversed the compensation judge's conclusion that Johnson was entitled to make a direct claim for medical expenses. The dissenting judge reasoned that the dual representation requirement relied upon by the majority applies only where potential intervenors have actually intervened and the employee is asserting a claim for the same bills and costs. According to the dissent, Johnson was entitled to bring direct claims for medical expenses because TCO and PWC never intervened.

Both Johnson and Concrete Treatments filed timely petitions for writ of certiorari.

**ANALYSIS**

Two issues are before us. First, Johnson asks us to determine whether he may assert a direct claim for unpaid medical bills when the unpaid medical providers' intervention interests were extinguished under Minnesota Statutes section 176.361 (2022). Second, Concrete Treatments asks us to determine whether the WCCA erred in affirming the

8

compensation judge's findings that Johnson sustained a permanent work-related injury in October 2018 and that 60 percent of the responsibility for Johnson's low back condition is properly apportioned to that injury.

I.

We begin with Johnson's right to assert a direct claim for unpaid medical expenses. The Workers' Compensation Act, Minnesota Statutes chapter 176 (2022),[3] gives an injured employee the right to seek payment from the employer for the costs of medical treatment that is reasonably required to cure or relieve the effects of an injury arising out of and in the course of employment. Minn. Stat. § 176.135; *see Gamble v. Twin Cities Concrete Prods.*, 852 N.W.2d 245, 248 (Minn. 2014); *see also* Minn. Stat. § 176.001 ("It is the intent of the legislature that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of this chapter.").

When there is a dispute over the responsibility for an injured employee's medical treatment, as there is here as to Johnson's employers' responsibility, the employee has the right, under Minnesota Statutes section 176.291, to file a petition directly asserting any claims for compensation, including for medical expenses. *See Lagasse v. Horton*, 982 N.W.2d 189, 198 (Minn. 2022) ("The claim petition is the procedural vehicle for commencing an action regarding a dispute surrounding a claim for compensation."); Minn.

---

[3] During the 2024 legislative session, the Legislature amended parts of chapter 176. Act of May 8, 2024, ch. 97, §§ 1–50 (effective Aug. 1, 2024). The amendments did not substantively change the language of the relevant provisions and therefore do not affect our analysis of the issues on appeal.

Stat. § 176.291(b)(10) ("The petition shall also state and include . . . the nature and extent of the claim."); *see also Adams v. DSR Sales, Inc.*, 64 Minn. Workers' Comp. Dec. 396, 397 (WCCA 2004) ("[T]his court has previously held that under Minn. Stat. § 176.291 the employee has the right to assert directly any claims for medical expenses."). The Act also gives medical providers who treat injured employees for work-related injuries the right to assert their own claim for reimbursement directly from the employer. To do so, the medical provider may intervene in the proceedings initiated by the employee. Minnesota Statutes section 176.361 sets out the intervention procedure.

The WCCA majority held—and Furniture & Things argues—that Johnson cannot assert a direct claim for unpaid medical expenses owed to TCO and PWC (collectively, the Providers) because to do so, his attorney was required to unequivocally establish dual representation of Johnson and the Providers at the workers' compensation hearing. Concrete Treatments agrees with the WCCA's conclusion on this score but approaches the issue differently, arguing that section 176.361, subdivision 2, plainly prohibits Johnson from asserting a direct claim for medical expenses because the Providers' intervention interests were extinguished by their failure to intervene by the statutory deadline. Johnson argues that the WCCA erred by denying his direct claim because the dual representation requirement relied upon by the WCCA is inapplicable here, and his right to assert a direct claim is unaffected by the intervention procedures in section 176.361. We agree with Johnson.

To resolve this issue, we must interpret the Workers' Compensation Act. Statutory interpretation presents a question of law that we review de novo. *J.D. Donovan, Inc. v.*

*Minn. Dep't of Transp.*, 878 N.W.2d 1, 4 (Minn. 2016). The objective of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022). When the language of a statute is unambiguous, we interpret the words of the statute according to their plain and ordinary meaning. *Cocchiarella v. Driggs*, 884 N.W.2d 621, 629 (Minn. 2016). A statute is ambiguous only if it is "susceptible to more than one reasonable interpretation." *Harkins v. Grant Park Ass'n*, 972 N.W.2d 381, 386 (Minn. 2022).

## A.

We first must determine whether the Providers' decision not to intervene in the workers' compensation proceeding barred Johnson from asserting a claim for the Providers' unpaid medical bills. This question requires us to decide whether the intervention language in Minnesota Statutes section 176.361, subdivision 2(a), or the compensation judge's order reciting that language, affected Johnson's right to claim the unpaid medical expenses. The WCCA majority and dissent—along with the compensation judge—all reasoned that Johnson did not lose his ability to pursue his direct claim in this way, and we agree.

Under section 176.361, subdivision 2, "[a] person desiring to intervene in a workers' compensation case as a party, including but not limited to a health care provider who has rendered services to an employee . . . shall submit a timely written motion to intervene." The motion must be "served and filed within 60 days after a potential intervenor has been served with notice of a right to intervene." Minn. Stat. § 176.361, subd. 2(a). "Where a motion to intervene is not timely filed under [section 176.361], the potential intervenor

interest shall be extinguished and the potential intervenor may not collect, or attempt to collect, the extinguished interest from the employee." *Id.*

The plain language of section 176.361, subdivision 2, does not distinguish between potential intervenors who intervene late and those who do not intervene at all.[4] We therefore come to the straightforward conclusion that if a motion to intervene is not served and filed within the required 60 days—including if it is never filed at all—then it is not timely filed under section 176.361, and a potential intervenor's intervention interest is extinguished by operation of the statute. Because neither TCO nor PWC filed a motion to intervene, they did not timely intervene under section 176.361, and their intervention interests were extinguished.

Although section 176.361 makes clear that a failure to intervene by the deadline results in extinguishment of the *potential intervenor's* intervention interest, the question here is what effect such extinguishment has on the *employee's* right to assert a direct claim for unpaid medical expenses. Nothing in the language of section 176.361 impairs the right of the employee to seek direct payment of medical expenses. In fact, section 176.361 is entirely focused on the potential intervenor, not the employee. Accordingly, we conclude that the plain language of section 176.361 does not limit an employee's right to seek direct

---

[4]     We do not suggest that it would be unreasonable for the Legislature to distinguish between those who attempt to intervene late and those who do not intervene at all. The plain language, however, does not include such a distinction.

12

payment of medical expenses, even when a medical provider has failed to intervene to assert a claim in accordance with the statute.[5]

This plain language interpretation aligns with the Legislature's directive "that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and *medical benefits to injured workers* at a reasonable cost to the employers who are subject to the provisions of this chapter." Minn. Stat. § 176.001 (emphasis added). Longstanding WCCA case law is likewise consistent in holding that an injured employee's right to assert a direct claim for unpaid medical expenses is not barred by the unpaid medical provider's failure to intervene. In *Adams v. DSR Sales, Inc.*, the injured employee asserted a direct claim for medical expenses. 64 Minn. Workers' Comp. Dec. 396, 397 (WCCA 2004). The employee's attorney notified several health care providers of their right to intervene, but only one intervened. *Id.* Relying on the extinguishment language in section 176.361,

---

[5] Although the statutory language is unambiguous, and we need not resort to legislative history in our analysis, the purpose of statutory interpretation is to "ascertain and effectuate the intention of the legislature," and we have found nothing to suggest that the Legislature intended to prevent an employee from asserting a claim for unpaid medical bills when the unpaid provider does not intervene. *See* Minn. Stat. § 645.16 ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."). Instead, the legislative history shows that the extinguishment language in section 176.361, subdivision 2(a), was intended simply to avoid tardy intervention—a purpose that is achieved by preventing potential intervenors from joining the proceeding after the statutory deadline. *See* Hearing on S.F. 3136, S. Comm. Jobs, Hous. & Cmty. Dev., 82nd Minn. Leg., Feb. 27, 2002 (Workers' Compensation Advisory Council bill summary) (stating that the extinguishment language sets "stricter standards for third parties wanting to intervene" to address "continuing problems with third parties, typically health care providers, attempting to intervene in workers' compensation cases late in the process"); *see also* Hearing on H.F. 3348, H. Comm. Com., Jobs & Econ. Dev., 82nd Minn. Leg., Feb. 20, 2002 (committee minutes and House Research bill summary) (stating that the extinguishment language "[s]pecifically provides for the extinguishing of an intervenor's rights if the intervenor fails to intervene in a timely fashion").

subdivision 2(a), the employer and insurer argued that the employee could not assert a direct claim for unpaid medical expenses owed to the non-intervening health care providers because of the providers' failure to intervene. *Id.* at 398.

The WCCA squarely rejected this argument, stating, "[t]he employer and insurer contend that the statute now *requires* a medical provider to intervene, regardless of whether or not the employee has asserted a direct claim for payment of the [provider's] bill. We disagree." *Id.* The WCCA reasoned that " '[t]he employee's claim and the health care provider's claim is the same – that is, entitlement to payment of the medical or chiropractic bills incurred by the employee – and in the usual case, a provider relies on the employee and the employee's attorney to pursue payment of the claim. In such a situation, there is normally little or no need for a separate intervention by the healthcare provider.' " *Id.* at 398–99 (quoting *Stoia v. Seagate Tech.*, 52 Minn. Workers' Comp. Dec. 417, 424 (WCCA 1995)). The WCCA concluded that the employee could assert a direct claim for payment of medical expenses even if the medical providers had not intervened, and the medical providers were not barred from payment. *Id.* at 398–99. The analysis in *Adams* is consistent with the statute's plain language.

Concrete Treatments contends that the facts here are distinguishable because the compensation judge in *Adams* did not extinguish the medical providers' intervention interests by court order, as the compensation judge did here. But the compensation judge's order in this case did nothing more than recite the language of section 176.361, subdivision 2(a), which relates only to the Providers, not to Johnson. The employer in *Adams* tried to rely on the same language from section 176.361, and in that case, the WCCA properly

14

concluded that this language did not limit the employee's right to make a direct claim for unpaid medical bills. The extinguishment order issued by the compensation judge therefore does not distinguish this case from *Adams* or prevent Johnson from asserting a claim for his unpaid medical bills in his workers' compensation claim.

Furthermore, since *Adams*, the WCCA has correctly reiterated the general principle that injured employees retain the right to assert a direct claim for medical expenses regardless of non-intervention by the medical providers. *See Stanford v. Shaw Stewart Lumber Co.*, No. WC08-206, 2009 WL 159039, at *7 (Minn. WCCA Jan. 8, 2009) ("[A]n employee may independently pursue and obtain payment for medical expenses, regardless of whether the providers rendering the treatment have intervened in the matter."); *Erven v. Magnetation, LLC*, 76 Minn. Workers' Comp. Dec. 433, 440 n.2 (WCCA 2016) ("[A] health care provider is not *required* to intervene to have its bill paid. Medical treatment is one of the benefits owed to an injured employee under the statute and an employee may assert a claim for that treatment directly."). *Adams*, *Stanford*, and *Erven* confirm what we hold: The extinguishment provided in section 176.361, subdivision 2(a), relates to the Providers' *procedural* right to intervene in the workers' compensation matter, not to the employee's freestanding *substantive* right to have their qualifying medical expenses paid by their employer.

Accordingly, we conclude that Johnson is entitled to assert a direct claim for medical expenses, regardless of the extinguishment of the Providers' intervention interests under Minnesota Statutes section 176.361.

B.

We next resolve whether Johnson lost his ability to assert his direct claim for his unpaid medical bills because his attorney did not unequivocally establish that he also represented the Providers at the time of the hearing. Here the judges of the WCCA parted ways. Although the WCCA majority concluded that Johnson could not bring this claim because his attorney had not satisfied this "dual representation" requirement, we agree with the WCCA dissent that the dual representation requirement is inapplicable here.

The dual representation requirement is not expressly contained in the language of Minnesota Statutes section 176.361. Rather, the requirement was recognized by the WCCA in a line of cases interpreting section 176.361. The WCCA majority and Furniture & Things cite three WCCA cases to support the dual representation requirement's applicability here. *See Fischer v. ISD 625*, 76 Minn. Workers' Comp. Dec. 889 (WCCA 2016); *Xayamongkhon v. ISD 625*, 77 Minn. Workers' Comp. Dec. 81 (WCCA 2016), *aff'd without opinion* (Minn. 2017); *Duehn v. Connell Car Care, Inc.*, 77 Minn. Workers' Comp. Dec. 201 (WCCA 2017).

In *Fischer* and *Xayamongkhon*, the medical providers intervened by the statutory deadline but did not appear at the hearing, and the employee's attorney did not establish dual representation of the employee and the providers. *Fischer*, 76 Minn. Workers' Comp. Dec. at 890; *Xayamongkhon*, 77 Minn. Workers' Comp. Dec. at 82. The WCCA, therefore, denied the medical providers' claims for medical expenses and the injured employee's claim for medical expenses. *Fischer*, 76 Minn. Workers' Comp. Dec. at 891–92; *Xayamongkhon*, 77 Minn. Workers' Comp. Dec. at 83–84.

16

But at the time of the hearings in *Fischer* and *Xayamongkhon*, section 176.361 *required* intervenors to attend the workers' compensation hearing.[6] The WCCA reasoned that "once a provider has intervened in a pending claim, the provider is a party and like all parties has an obligation to attend conferences and hearings." *Xayamongkhon*, 77 Minn. Workers' Comp. Dec. at 83; *see Fischer*, 76 Minn. Workers' Comp. Dec. at 891. By properly intervening, the providers in *Fischer* and *Xayamongkhon* essentially took ownership of the employee's claim for unpaid medical expenses. When the providers then failed to attend the hearing as required, the WCCA correctly concluded that the presence of the employee's attorney at the hearing could not save the providers' claims for reimbursement or unpaid medical expenses unless it was clearly established that the employee's attorney represented both the injured employee *and* the intervenor. Although the dual representation requirement was sensible under those circumstances, it is inapplicable here because the Providers did not intervene by the statutory deadline and also because section 176.361 no longer requires intervenors' attendance at the hearing.[7]

In *Duehn*, a medical provider failed to intervene by the deadline after receiving proper notice. 77 Minn. Workers' Comp. Dec. at 211. The WCCA concluded that the

---

[6]    *See* Minn. Stat. § 176.361, subd. 4 (2015) ("Unless a stipulation has been signed and filed or the intervenor's right to reimbursement has otherwise been established, the intervenor shall attend all settlement or pretrial conferences, administrative conferences, and the hearing. Failure to appear shall result in the denial of the claim for reimbursement.").

[7]    In 2016, the Legislature amended section 176.361, subdivision 4, to require intervenors to attend settlement or pretrial conferences and the hearing only when ordered by the compensation judge. Act of May 12, 2016, ch. 110, art. 3, § 9, 2016 Minn. Laws 110, 124.

employee could not assert a claim for medical expenses owed to that medical provider because the employee's attorney did not establish dual representation of the employee and the untimely intervenor at the hearing. *Id.* at 212. This conclusion conflicts with the WCCA's holding in *Adams*, our holding today, and the plain language of section 176.361, which does not distinguish between those who attempt to intervene late and those who never intervene. We reiterate that even if a medical provider itself is barred from bringing a claim for medical expenses because it sought to intervene after the statutory deadline, the employee's right to assert a direct claim for those medical expenses endures.

Because we conclude that the dual representation requirement is inapplicable here, and Johnson's direct claim is otherwise unaffected by the extinguishment of the Providers' intervention interests, we reverse the WCCA's conclusion that Johnson is not entitled to assert a direct claim for unpaid medical bills owed to the Providers. We accordingly remand this matter to the WCCA to determine whether additional factual findings are necessary regarding Johnson's direct claim for his unpaid medical expenses.

## II.

We turn next to the dispute about the compensation judge's findings. When the WCCA affirms the compensation judge's factual findings, as it did here, we must uphold the affirmance unless it is manifestly contrary to the evidence, or the evidence clearly requires reasonable minds to conclude otherwise. *Lagasse*, 982 N.W.2d at 202. We review the WCCA's legal determinations de novo. *Bruns v. City of St. Paul*, 555 N.W.2d 522, 525 (Minn. 1996).

18

Concrete Treatments challenges the compensation judge's findings that Johnson sustained a permanent work-related injury in October 2018 and that the October 2018 injury was 60 percent responsible for Johnson's low back condition. We address Concrete Treatments' arguments in turn.

First, Concrete Treatments argues that the WCCA erred in affirming the compensation judge's findings because the compensation judge applied an incorrect legal standard in finding that Johnson sustained a permanent work-related injury in October 2018. Concrete Treatments argues that the compensation judge applied the causation standard for a "*Gillette* injury,"[8] despite the fact that Johnson alleged that he sustained a "specific injury." The compensation judge did not state that he was treating Johnson's injury as a *Gillette* injury, nor did he refer to Johnson's ordinary job duties as the cause of the injury. In fact, the compensation judge referred to Johnson's 2018 injury as occurring on a specific date—October 1. But, because the compensation judge cited a case that involved a *Gillette*-type injury, Concrete Treatments argues that the compensation judge applied the incorrect legal standard for causation.

In setting out the causation standard, the compensation judge correctly stated that "[i]njuries are compensable if the employment is a substantial contributing factor not only to the cause of the condition but also to the aggravation or acceleration of a pre-existing condition." To support this proposition, the compensation judge cited *Vanda v. Minn.*

---

[8] A *Gillette* injury is an injury that occurs because of repetitive, minute trauma brought about by the performance of ordinary job duties, rather than one specific injury event. *Gillette v. Harold, Inc.*, 101 N.W.2d 200, 206 (Minn. 1960).

*Mining & Mfg. Co.*, 218 N.W.2d 458 (Minn. 1974), which involved a *Gillette*-type injury, and *Wallace v. Hanson Silo Co.*, 235 N.W.2d 363 (Minn. 1975).

In *Vanda*, we recited the "longstanding rule . . . that when the usual tasks ordinary to an employee's work substantially aggravate . . . a preexisting disease or latent condition to produce a disability, the entire disability is compensable . . . ." 218 N.W.2d at 458. And although the employee in *Vanda* had a *Gillette*-type injury, the rule we stated there is not exclusive to one category of injury. When a work injury, whether *Gillette* or specific, aggravates a preexisting condition, the entire disability is compensable. *Wallace* illustrates this point because that case involved a specific injury, and we cited *Vanda* for the same principle. *Wallace*, 235 N.W.2d at 363.

The WCCA has also cited *Vanda* and *Wallace* for the same causation principle in cases involving specific injuries. *See, e.g.*, *Parker v. Foley Locker, Inc.*, 77 Minn. Workers' Comp. Dec. 367 (WCCA 2017) (involving a work-related injury from a slip and fall that aggravated a preexisting back condition); *Jarveis v. Carroll Distrib.*, 76 Minn. Workers' Comp. Dec. 999 (WCCA 2016) (involving an injury from a work-related car accident that aggravated a preexisting back condition). Because the legal standard cited by the compensation judge applies to specific injuries, we conclude that the compensation judge applied the correct legal standard for causation.

Next, Concrete Treatments argues that the WCCA erred in affirming the compensation judge's finding that Johnson sustained a permanent work-related injury in October 2018 because the finding is manifestly contrary to the evidence. A compensation judge's finding of whether a permanent injury occurred is a question of fact, reversible

20

only if it is manifestly contrary to the evidence. *Kirchner v. County of Anoka*, 339 N.W.2d 908, 910 (Minn. 1983). To support its argument, Concrete Treatments relies on an error in Dr. Banks's narrative report and parts of Johnson's testimony. In the narrative report, Dr. Banks refers to an October 2018 MRI scan that was not actually performed. A single misstated fact, though, does not discredit an entire opinion. *Gianotti v. ISD 152*, 889 N.W.2d 796, 802 (Minn. 2017) (concluding that a single statement taken out of context did not discredit an expert's entire report). The compensation judge relied on expert opinions, medical records, and Johnson's testimony to conclude that Johnson sustained an initial work injury in March 2005 that was permanently aggravated in October 2018. And although more than one inference may be drawn from some of Johnson's testimony, the compensation judge's finding is not manifestly contrary to the evidence.

Finally, Concrete Treatments argues that the compensation judge's apportionment decision is manifestly contrary to the evidence. This is another question of fact for the compensation judge, reversible only when manifestly contrary to the evidence. *DeNardo v. Divine Redeemer Mem'l Hosp.*, 450 N.W.2d 290, 293 (Minn. 1990). Concrete Treatments relies on a mistake in Dr. Engasser's opinion to advance its argument. Dr. Engasser stated, "I agree with Dr. Johnson's apportionment of 40 percent due to the March 4, 2005, injury and 60 percent due to the October 1, 2018, injury." But Dr. Johnson's apportionment determination was 60 percent to the *December* 2018 car accident injury, not to the October 2018 injury. The WCCA concluded that the compensation judge could have reasonably inferred that Dr. Engasser misread Dr. Johnson's report as referring to the *October* 2018 injury and incorrectly stated that he agreed with Dr. Johnson.

We agree with the WCCA's assessment. At another point in his report, Dr. Engasser opined that the October 2018 injury was a substantial contributing factor to Johnson's condition, while the December 2018 injury was a minor injury. Although the record could also have supported other apportionment determinations (like the 50/50 apportionment that Dr. Banks suggested), the WCCA did not err in affirming the compensation judge's apportionment determination.

Because the compensation judge applied the correct legal standard for causation, and the findings at issue are not manifestly contrary to the evidence, we uphold the WCCA's affirmance of the compensation judge's findings.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the decision of the Workers' Compensation Court of Appeals, and we remand this matter to the Workers' Compensation Court of Appeals for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.


HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

22